IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RACHEL EULA DRAKE, | )<br>) |
| Plaintiff, | )<br>) |
| | )    3:12-CV-02223-AC |
| v. | )<br>) |
| COMMISSIONER of Social Security, | )    OPINION AND ORDER |
| | ) |
| Defendant. | )<br>) |

JONES, J.,

Plaintiff Rachel Eula Drake appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

On January 13, 2010, Rachel Eula Drake filed an application for Social Security Disability Benefits alleging she was disabled due to trochanteric bursitis, migraines, back strain, left shoulder pain, and left wrist pain. Admin R. 116.

On October 6, 2011, the Administrative Law Judge (ALJ) applied the five-step sequential test to determine whether Drake was disabled. 20 C.F.R. § 404.1520; Admin. R. 22-31. At step one, the ALJ found that Drake had not engaged in substantial gainful activity since April 13, 2008. Admin. R. 24. At step two, the ALJ found Drake's trochanteric bursitis was her only severe impairment.

Admin. R. 24-26. At step three, the ALJ found Drake does not have an impairment medically equal to those listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Admin. R. 26-27.

After step three, the ALJ determined Drake's "residual functional capacity" to perform physical and mental work despite limitations from her impairments. Admin. R. 27. The ALJ found Drake had the residual functional capacity to perform sedentary work including standing or walking two hours in an eight hour day and lifting ten pounds frequently and twenty pounds occasionally. Admin. R. 27. The ALJ also found Drake required a sit/stand option because all her postural positions were limited to occasional. Admin. R. 27. Additionally, the ALJ found Drake was limited to occasional overhead reaching with her left shoulder; occasional fingering and feeling with the non-dominant left upper extremity; and avoidance of moderate exposure to cold, vibrations, and hazards. Admin. R. 27. The ALJ determined Drake could not be expected to drive at night or climb ropes, ladders, or scaffolds. Admin. R. 27.

At step four, the ALJ determined Drake has no past relevant work that she can perform. Admin. R. 30. At step five, the ALJ found Drake has the residual functional capacity to perform the jobs of wafer breaker (D.O.T. 726.687-046) and taper (D.O.T. 017.684-010). Admin. R. 30. Thus, the ALJ found that Drake was not disabled as defined by the Social Security Act. Admin. R. 31.

Drake now requests that this Court reverse the decision of the ALJ and find her disabled.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880 (9th Cir. 2006). The Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record, even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Credibility Determinations

#### A. Plaintiff's Testimony

Although the ALJ told Drake at the administrative hearing he thought she was being truthful, he ultimately found Drake not credible as to the severity of her pain-related symptoms to the extent that her testimony was inconsistent with her residual functional capacity. The ALJ believed Drake's testimony that her depression did not prevent her from working. He also believed that she could read or study for three to five hours a day, watch television or play computer games for four to six hours a day, do light household cleaning, prepare meals, drive for twenty minutes, attend church, and help her legally blind grandmother go grocery shopping and attend doctor's appointments. Admin R. 26, 49, 52, 54, 312, 687. Further, he believed that Drake had to adjust between sitting and standing positions. Admin R. 27, 48. However, the ALJ did not believe that Drake's pain was so severe that she could only sit for fifteen to twenty minutes at a time, stand for ten minutes a time, walk 500 feet, or lift seven pounds. Admin. R. 48-50.

An adverse credibility determination must include specific findings supported by

substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ must consider all the evidence in the case record when assessing a claimant's credibility, including objective medical evidence, medical opinions from treating and examining physicians, treatment history, daily activities, work history, third party observations of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284; SSR 96-97p, 1996 WL 374186, at *5. Additionally, the ALJ may consider ordinary techniques of credibility evaluation, such as inconsistent statements, testimony that appears less than candid, and an unexplained failure to follow a prescribed course of treatment. *See, e.g., Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1994); *Fair v. Bowen*, 885 F.2d 587, 602-04 (9th Cir. 1989).

In the present case, the ALJ gave clear and convincing reasons for finding Drake not credible. First, the ALJ noted several discrepancies between the severity of Drake's complaints and the medical evidence. Conflicts between a claimant's subjective complaints and the objective medical evidence are a proper basis to question a claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ noted that the recommended course of medical treatment by Drake's treating physicians was not consistent with the severity of symptoms Drake alleged. Drake testified her pain is so severe she can barely sit,

walk, or stand, but her physicians recommended conservative treatment for her trochanteric bursitis, such as medication and physical therapy. Such conservative treatment supports an adverse inference as to a claimant's credibility regarding her disability. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

Second, the ALJ's residual functional capacity determination was consistent with the reliable medical opinions in the record, including examinations by treating physician Dr. Webb, the physical consultative exam performed by Dr. Mangin in January 2009, the physical residual functional capacity assessment performed by J. DeBorja on behalf of the State Disability Determination Services (DDS) in February 2009, and the physical residual assessment by PT Carroll in April 2008. All of these opinions found Drake capable of sedentary-light physical work, lifting 20 pounds occasionally and 10 pounds frequently, and standing or walking two hours of an eight hour day with a sit/stand option for her to recover.

Third, the ALJ also noted several inconsistencies in Drake's testimony. Inconsistencies within the claimant's testimony or between her testimony and conduct can indicate that the claimant is not credible. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Drake testified her pain was so severe she could barely walk, stand, or sit, could only walk 500 feet, and could no longer make quilts. Admin. R. 47-48, 58-59. However, she previously reported to Dr. Webb that she could occasionally walk 8,000 steps per day. Admin. R. 339. Also, according to Dr. Mangin in January 2009 and J. DeBorja in February 2009, Drake was able to make quilts and scarves. Admin. R. 671, 687. Drake also reported she is able to regularly attend church, play on the computer or watch television for four to six hours a day, read for three to five hours a day, and assist her grandmother with grocery shopping. Admin R. 26, 54, 312, 687. Thus, the ALJ

5 - OPINION AND ORDER

was reasonable in finding Drake's daily activities inconsistent with her reported severity of pain.

The ALJ found Drake's impairments could be controlled by medication, and Drake opted out of several treatments recommended by her physicians. Impairments that can be effectively controlled by medication are not disabling for Social Security purposes. *Warre v. Comm'r of Soc. Sec. Admin*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983). Additionally, non-compliance with recommended treatments can cast doubt on a claimant's sincerity. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48. (9th Cir. 2001). Here, the ALJ noted that Drake no longer took Gabapentin and decreased the amount of muscle relaxer medication she was taking. The ALJ also noted that Drake refused steroid injections to treat her symptoms, even though they were previously successful in relieving her pain. Admin. R. 28, 537. Drake also received a subacromial bursa injection which minimized her pain, but there was no evidence Drake continued with those injections. Admin R. 28. The record also indicates that there were several treatment options available to reduce the severity and frequency of Drake's migraines. Although Drake reported that Celebrex helped her migraines, she testified in the administrative hearing that she was only taking herbal medications, Advil, and Tylenol-3 for migraines. Admin. R. 28, 52, 407. Additionally, Dr. Webb had discussed triptans to treat Drake's migraines, but she opted not to try them. Admin. R. 477. The ALJ was reasonable in finding Drake's impairments not disabling because they could be controlled by medication which Drake declined.

Thus, the ALJ's credibility determination of Drake's testimony included specific findings supported by substantial evidence and clear and convincing reasons. The ALJ's factual findings are supported by inferences reasonably drawn from the record. Additionally, the ALJ's findings

are sufficiently specific to conclude that he did not arbitrarily discredit Drake's testimony. Drake has not contested these specific findings, but argues only that the ALJ improperly assessed her credibility by finding her somatic dysfunction to be a psychological disorder. Accordingly, I uphold the credibility determination of the ALJ.

### B. Physical Therapist Evaluation

Drake argues that the ALJ failed to consider all of the medical evidence by discounting the March 29, 2011 physical capacity evaluation (PCE) of physical therapist Lawrence Andes. PT Andes found that Drake was limited to part time work of two to four hours a day, and her ability to bend was limited. A physical therapist's opinion in a disability benefits proceeding "is valuable only to the extent that it is supported by medical evidence." *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984), citing *Sample v. Schweiker*, 694 F.2d 639, 643-44 (9th Cir. 1982). Physical therapists are not acceptable medical sources in the context of Social Security disability benefits. 20 C.F.R § 404.1513. Nevertheless, the opinion of a physical therapist is important and should be evaluated along with the other relevant evidence in a claimant's file. SSR 06-03p, at *3.

An ALJ may discount the opinion of a physical therapist if the ALJ gives reasons germane to the witness. *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). An ALJ may discount a physical therapist's opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. Additionally, an ALJ need not accept opinions that are brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ rejected the findings of PT Andes because he was not an acceptable medical

7 - OPINION AND ORDER

source and his opinion was not supported by objective medical evidence or Drake's daily activities. First, the ALJ gave greater weight to the findings of Dr. Mangin and Dr. Webb, who both believed Drake could perform sedentary work on a full time basis. Admin. R. 513, 674. Dr. Webb and Dr. Mangin are both acceptable medical sources under Social Security law, and Dr. Webb was Drake's primary treating physician. Drake's argument that PT Andes' opinion is consistent with the opinions of the other two physical therapists is not supported by the record. In fact, while PT Andes found that Drake had a limited ability to bend, PT Carroll found Drake was able to bend frequently. Admin. R. 380, 384. Additionally, while PT Andes' opinion is consistent with Dr. David Koon's opinion, the ALJ reasonably found that Dr. Koon was not a credible source and Drake does not dispute that finding. Admin. R. 29.

Second, the ALJ found that PT Andes' opinion contradicts the objective medical evidence, which shows only trace amounts of trochanteric bursitis. Third, the ALJ found that Mr. Andes's report conflicted with Drake's activities of daily living. Admin. R. 30. Drake reported several times that she reads and studies three to five hours a day, and plays computer games or watches television four to six hours a day. Admin. R. 26, 312. The ALJ was reasonable in finding that these activities were inconsistent with Mr. Andes's opinion that Drake could sit for only two hours out of eight. Admin. R. 980. Thus, the ALJ did not err in discounting the opinion of PT Andes.

### C. Lay Witness Evidence

Drake argues the ALJ failed to take into consideration favorable testimony proffered by the Plaintiff's mother. Drake's mother answered a questionnaire which stated Drake needs help getting in and out of the bathtub and she has difficultly shaving her legs because she has to bend and stand back up. The mother's questionnaire also stated that Drake helps to prepare only prepackaged meals, that she can put dirty clothes in a basket but not the washer, that she can

8 - OPINION AND ORDER

sweep the floor but not into a dustpan, and that she can set the table only if the mother carries over the plates. Admin. R. 242. The mother wrote: "if lifting, bending, or much walking is required, she usually can't do it." Admin. R. 242.

First, the ALJ's treatment of the mother's statements is not erroneous because the limitations described by the mother generally fall within the residual functional capacity assessment. The ALJ's residual functional capacity assessment includes significant limitations on lifting, bending, and walking. Second, to the extent that the mother's statements do not fall within the residual capacity assessment, the ALJ's reasons for discounting Drake's credibility apply to the mother's statements. Here, the mother's testimony is reliant on Drake's own reporting of her symptoms. The ALJ's reasons for discounting a claimant's credibility can apply equally to lay witness statements. *See Molina,* 674, F.3d at 1122.

Finally, any failure by the ALJ to address disfavorable testimony by Drake's mother was harmless error. If the ALJ's residual functional capacity determination remains supported despite the error, then the error is harmless. *See Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1162-63, n.4 (9th Cir 2008). An ALJ's inadequate evaluation of lay witness evidence is harmless where the lay witness opinion contradicts "more reliable medical evidence that the ALJ credited." *Molina v. Astrue,* 674 F.3d 1104, 1118-19 (9th Cir. 2011). Here, the ALJ relied upon the objective medical evidence and the opinions of Dr. Webb and Dr. Mangin to determine Drake's residual functional capacity. Thus, the ALJ's residual functional capacity determination remains supported despite the mother's testimony, and any error was harmless.

## II.    Step II Determination

Drake argues the ALJ erred at step two in finding that her only severe impairment is

trochanteric bursitis. Specifically, Drake points out that the medical record contains evidence that Drake also suffers from somatic dysfunction, depression, anxiety, migraines, a deformed wrist, arthritis of the spine, and a shoulder injury. Drake argues the ALJ failed to consider whether these impairments, separately and in combination, cause limitations to her functional ability. This argument fails for two reasons. First, the ALJ made a favorable determination in finding that Drake had a severe impairment of trochanteric bursitis. Any error in failing to designate Drake's additional impairments as severe did not prejudice Drake. Second, the ALJ considered and accounted for all the evidence of functional limitations presented by doctors, psychologists, physical therapists, and lay witnesses in determining Drake's residual functional capacity. *See Burch v. Barnhart,* 400 F.3d 676, 682 (9th Cir. 2005); *see also Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007). Although Drake brings up additional diagnoses besides trochanteric bursitis, she has not identified any evidence of functional limitation that the ALJ failed to consider. Thus, there is no additional evidence that Drake cannot perform work activities consistent with the ALJ's residual functional capacity determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this 21st day of July, 2014.

Robert E. Jones, Senior Judge
United States District Court